## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SCOTT REHBERG, WILLARD ALLEN RILEY, and MARIO RONCHETTI, individually and on behalf of all similarly situated individuals,<br><br>               Plaintiffs,<br><br>-v-<br><br>FLOWERS FOODS, INC. and FLOWERS BAKING CO. OF JAMESTOWN, LLC,<br><br>               Defendants. | Court File No. 12-cv-00596-MOC-DSC<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE** |

## I.      Introduction

Plaintiffs are bakery distributors who deliver Flowers Foods products to retailers. Defendants represented to Plaintiffs and similarly situated distributors ("Distributors") that they would be independent businesses and have the freedom to exercise managerial skill to run a profitable business. Over the past several years, consolidation and changes in the grocery industry have caused Defendants to change the way they do business. Defendants have negotiated detailed sales contracts with every grocery chain. As a result of these sales contracts, Defendants control every aspect of the distribution process—price, quantity, service levels, sales, advertisements, promotions, marketing, stale product handling, delivery procedures, discipline, customer service, and more. Consequently, Defendants dictate every aspect of Plaintiffs' jobs. Distributors are no longer independent businesses but common employees serving only one master: Flowers Foods.

In addition to stripping Distributors Plaintiffs and similarly situated distributors of their independence, the job requirements imposed by Defendants have increased the workload of the Distributors so that each is required to work 50-55 hours per week. In recognition of Distributors' status as employees, Defendants subsidize each Distributor to take two week's vacation time, provide substitute distributors when a Distributor is unable to work, and pay Federal Insurance Contributions Act (FICA) payroll taxes on behalf of each Distributor. Despite treating Distributors like employees in almost every other respect, Defendants do not pay overtime premium pay as required by federal and state laws. Plaintiffs bring this lawsuit to recover, among other things, monetary damages for violation of the FLSA's overtime pay requirements.

Plaintiffs bring this lawsuit under section 261(b) of the Fair Labor Standards Act ("FLSA") on behalf of all Distributors who work or worked for Flowers Baking Co. of Jamestown, LLC. The named plaintiffs, Scott Rehberg, Willard Allen Riley, and Mario Ronchetti, have been joined so far by six former and current employees of Defendants who worked as Distributors. These Plaintiffs and the putative class all: (a) share the same "Distributor" job title, responsibilities, training and performance standards, (b) routinely work more than forty hours in a work week; and (c) are all classified as "independent contractors," not paid overtime for hours in excess of forty. By this motion, Plaintiffs request this Court approve and facilitate notice to putative class members whose claims may fall victim to the statute of limitations that continues to run while the Court considers this motion.[1]

Early notice in FLSA proceedings is consistent with the remedial purpose of the Act. Plaintiffs, having more than sufficient facts to support conditional certification, ask this Court to

---

[1] Most putative class members reside in North Carolina with fewer in South Carolina and, potentially, some reside in other states.

follow precedent and grant their motion for conditional certification and judicial notice. Plaintiffs attach a proposed notice and proposed consent form as Exhibit 1 to this memorandum; the proposed documents clearly and concisely outline the rights of putative class members. Plaintiffs also request the Court to direct Defendants to provide Plaintiffs' counsel with an updated computer-readable data file containing information necessary to facilitate notice, including the names, last known mailing addresses, employment dates as a Distributor, dates of birth, and the last four digits of the social security numbers of all current and former employees of Flowers Baking Co. of Jamestown, LLC who have worked as a Distributor during the past three years.

## II.    Summary of Facts

This lawsuit was filed in this District on September 11, 2012 by Scott Rehberg, Willard Allen Riley, and Mario Ronchetti alleging that Defendants misclassified Distributors as exempt in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 207, *et seq.* and the North Carolina Wage and Hour Act, N.C. Gen. Stat. Ch. 95-25.1, *et seq.* (*See* Compl. at Dkt. 1.) The Plaintiffs brought their FLSA claim pursuant to section 216(b) of the FLSA, which provides for collective actions of "similarly situated" individuals.

Plaintiffs now ask this Court to conditionally certify this case as a collective action and to provide potential collective group members with notice of this lawsuit. Six additional Distributors have consented to join the named Plaintiffs in this lawsuit.

### A.    The parties

Plaintiff Scott Rehberg is a North Carolina resident who works for Defendants as a bakery Distributor in the state. (*See* Ex. 2, Rehberg Decl. at ¶ 2.) He performs delivery and merchandizing services to local retailers of bakery and snack food products sold by Flowers. (*Id.*

at ¶ 5.) Mr. Rehberg regularly works over 40 hours per week and has never received overtime premium pay. (*Id.* at ¶ 9.)

Plaintiff Willard Allen Riley is a resident of South Carolina who works for Defendants as a bakery Distributor in South Carolina. (*See* Ex. 2, Riley Decl. at ¶ 2.) Like Mr. Rehberg, he performs delivery and merchandizing services to local retailers of bakery and snack food products sold by Flowers. (*Id.* at ¶ 5.) Mr. Riley regularly works over 40 hours per week and has never received overtime premium pay. (*Id.* at ¶ 9.)

Plaintiff Mario Ronchetti is a resident of North Carolina who works as a Flowers Distributor in the state. (*See* Ex. 2, Ronchetti Decl. at ¶ 2.) Like all other plaintiffs, he performs delivery and merchandizing services to local retailers of bakery and snack food products sold by Flowers. (*Id.* at ¶ 5.) Mr. Ronchetti regularly works over 40 hours per week and has never received overtime premium pay. (*Id.* at ¶ 9.)

Defendant Flowers Foods, Inc., is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Flowers Foods hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers Foods, Inc. employs distributors in 31 states throughout the southern and eastern parts of the United States. (*See* Compl. at ¶ 7.)

Defendant Flowers Baking Co. of Jamestown, LLC, is a North Carolina corporation with its principal place of business at 801 West Main Street, Jamestown, North Carolina. Flowers Baking Co. is a wholly owned subsidiary of Flowers Foods, Inc. Flowers Baking hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Jamestown, North Carolina distribution center. (*See id.* at ¶ 8.) Plaintiffs

believe that Flowers of Jamestown, LLC employs approximately 225–290 employees in North Carolina and South Carolina.

Defendants' business consists of distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities. (*Id.* at ¶ 29.) Defendants integrate the named plaintiffs and putative collective group members into their existing network of operations. (*Id.*)

## B. Plaintiffs and the putative class members share the same job duties.

All Distributors work for Defendants pursuant to a substantially similar contract that outlines compensation and job performance expectations. (*See* Ex. 2, Declarations at ¶ 3.) Defendant classifies all Distributors as independent contractors and "statutory employees" pursuant to Section 3121(d)(3) of the Internal Revenue Code. (*See* Ex. 3, contracts at ¶ 15.1.) Defendant pays Distributors a "piece rate" wage based upon the amount of bakery products that Defendants' customers sell. (*See* Ex. 2, Declarations at ¶ 3.) However, Distributors are required to cover the costs of their own delivery vehicles and some equipment. (*See* Ex. 3, contracts at ¶¶ 9.1–9.5.) Defendant subsidizes Distributors' costs to have a Flowers employee operate his or her route while the distributor takes vacation or personal time. (*See* Ex. 2, declarations at ¶ 3.) A provision in the contract provides for an indefinite period of employment. (Ex. 3, contracts at ¶ 3.1.)

The main job duty of a Distributor is to deliver Defendants' products to Defendants' customers. (*See* Ex. 2, Declarations at ¶ 5.) Distributors arrive at Defendants' warehouses early in the morning to load their delivery trucks with Flowers Foods products. (*Id.*) After loading their trucks, Distributors drive to Defendants' various customers on a pre-determined route and

stock the customer's shelves with the product and remove stale product from the store.[2] (*Id.*) Plaintiffs repeat this process every day five days each week. (*Id.* at ¶ 5.) On the other two days of the week, Distributors make a call back to stores to restock and organize shelves but do not deliver fresh product. (*Id.*) Distributors work seven days a week. (*Id.*)

Distributors are required to use Defendants' handheld computer system, which Defendants provide. (*Id.* at ¶ 6.) The handheld computer system tells Distributors the price of the products, the quantity to deliver, historical sales, and similar information.[3] (*Id.*) The information is maintained in a central computer system controlled by Defendants. (*Id.*) Distributors also use the handheld system to place orders for products from Defendants; Defendants reserve the right to—and regularly do—change orders placed by Distributors. (*Id.*) Distributors are required to deliver and stock any product that Defendants demand. (*Id.*)

Defendants hold all Distributors to the same performance standards. (*Id.* at ¶ 8.) All Distributors are required to follow the same protocol when delivering to Defendants' customers. (*Id.*) Defendants also monitor Distributors using the company's handheld computer network. (*Id.*) Defendants retain the right to terminate a Distributor's contract if he or she does not satisfy Defendants' performance expectations. (*Id.*)

### C.    Distributors routinely work over forty hours per week and Defendants do not pay them overtime compensation.

Distributors routinely work over forty hours per week to deliver Defendants' products, place it on store shelves, and return stale product to Defendants. (*Id.* at ¶ 5, 9.) All Distributors

---

[2] Defendants' customers are large retailers such as Wal-Mart, Target, Dollar General, and Harris Teeter. (*Id.* at ¶ _.)

[3] Defendants negotiate the price of the products directly with their customers. (*Id.* at ¶ 7.) Similarly, Defendants negotiate with their customers to determine what products will be sold at each store, how much shelf space is allocated to the product, sale or promotional prices, and terms of payment. (*Id.*)

are compensated on a per-piece-sold basis. (*Id.* at ¶ 3.) No Distributor is paid overtime premium compensation for working over forty hours in a workweek because Defendants classify them as independent contractors outside the scope of the FLSA.[4] (*Id.* at ¶ 11.)

## III.  Argument

### A.  Conditional certification and judicial notice are appropriate because there is a class of similarly situated potential plaintiffs.

#### 1.  The FLSA Standard

The FLSA allows individuals to bring a collective action to recover unpaid overtime wages on behalf of themselves "and other employees similarly situated." 29 U.S.C. § 216(b). An FLSA collective action is different from a Fed. R. Civ. P. 23 class action because plaintiffs wishing to join an FLSA collective action must affirmatively consent ("opt-in") to the action by filing written consent to join the action with the district court. *Id*. Accordingly, there are two requirements for the certification of an FLSA collective action: (1) members of the proposed class must be similarly situated and (2) the collective group members must opt-in by filing a consent to join the suit. *See id.*; *see also Romero v. Mountaire Farms, Inc.*, 796 F.Supp.2d 700, 705 (E.D.N.C. 2011) (citing *De Luna–Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)).

The United States Supreme Court has described the judicial and legislative benefits of the collective action mechanism as follows:

> A collective action allows … plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged … activity.

---

[4] Interestingly, Defendants classify all Distributors as "statutory employees" for purposes of collecting and paying certain employment taxes pursuant to IRS regulations. (See Exhibit 3, contracts at ¶ 15.1.)

*Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 170 (1989). *See also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The two-tiered approach to certification of § 216(b) opt-in classes described above appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases.").

In recognition of the judicial efficiencies and cost-saving benefits of collective actions, courts in the Fourth Circuit follow a two-step approach when deciding whether the named plaintiffs are similarly situated for the purpose of certifying a collective action. At the first stage, known as the "notice stage," the court "makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010). The standard for conditional certification is "fairly lenient and requires 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cit. 2011) (internal quotation omitted). The second stage, which occurs after discovery is complete, is triggered if the defendant moves to decertify the class. *See id.* Courts apply a higher level of scrutiny in the second stage because the parties have developed a more complete factual record. *See id.*

The threshold issue to conditional certification at the notice stage is whether the plaintiffs have successfully demonstrated a class of similarly situated potential plaintiffs. *Romero*, 796 F.Supp.2d at 705. At this stage, the court does not conclude whether a class of similarly situated plaintiffs actually exists; rather it determines whether the plaintiffs have made a modest factual showing of similar situation that justifies notifying potential plaintiffs of the suit. *Id.*; *see also Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192–93 (3d Cir. 2011) ("produc[ing] some

Case 3:12-cv-00596-MOC-DSC   Document 28-1   Filed 11/20/12   Page 8 of 22

evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." (internal citations omitted)). Individuals are "similarly situated" for purposes of the FLSA if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions … ." *De Luna–Guerrero,* 338 F.Supp.2d at 654 (citations omitted).

But the "situations need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Romero*, 796 F.Supp.2d at 705 (quoting *De Luna–Guerrero,* 338 F.Supp.2d at 654) (internal quotation omitted). Importantly, affirmative defenses—individual or collective—raised by Defendants are not a factor at the notice stage. *E.g. Scott v. Bimbo Bakeries, USA, Inc.,* 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) ("at this preliminary stage of the case, [the] differences among proposed class members and the potential impact of FLSA exemptions do not undermine Plaintiffs' modest factual showing"); *Jirak v. Abbott Laboratories, 566* F.Supp.2d 845, 849–50 (N.D. Ill. 2008) ("[T]he application of an FLSA exemption is an affirmative defense on which Defendant carries the burden of proof") (citations omitted); *Westfall v. Kendle International, CPU, LLC,* 2007 WL 486606 at *9 (N.D.W.V. Feb.15, 2007) (holding alleged individual differences among putative collective group members, which are relevant to their status as "employees" under the FLSA, are better suited for second stage of the similarly situated analysis).

Once the court determines that the case is appropriate for conditional class certification, it may then permit notice to putative collective group members. The Supreme Court has held that the benefits to the judicial system of collective actions "depend upon employees receiving

Case 3:12-cv-00596-MOC-DSC   Document 28-1   Filed 11/20/12   Page 9 of 22

accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170.

## 2. Plaintiffs satisfy the lenient "similarly situated" standard.

Plaintiffs are able to make more than the necessary modest showing that they are similarly situated to the proposed FLSA Class of current and former drivers who were characterized as independent contractors. Plaintiffs and putative collective group members perform the same job duties, are subject to the same policies of defendants, face the same economic realities, and are all misclassified as independent contractors exempt from the FLSA.

### a. Distributors deliver Defendants' products to Defendants' customers using Defendants' protocols.

Conditional certification of the proposed collective group is appropriate here because the evidence surpasses that which is necessary to meet the "fairly lenient" similarly situated standard. All Distributors perform the same primary job duty—they deliver Defendants' products to Defendants' customers. They perform their jobs under the same performance standards. Distributors <u>must</u> service Defendants' customers with the products Defendants specify, at the prices Defendants dictate, on the days Defendants specify, and using the mobile computer system Defendants provide. Additionally, all Plaintiffs and putative collective group members are paid on a "piece rate" basis under the FLSA—they earn a set amount per piece sold by Defendants' customer. Distributors' compensation and job performance expectations are outlined in a contract that is substantially the same for all Distributors. Importantly, the contract purports to classify all Distributors as independent contractors. These facts easily support a finding that Plaintiffs and members of the proposed collective group are "similarly situated." *See, e.g. Johnson v. ECT Contracting LLC*, 2010 WL 625390 at *3 (M.D. Tenn. Feb. 18, 2010) (similarities in "job duties, training, and pay practices" is sufficient for conditional certification);

Case 3:12-cv-00596-MOC-DSC   Document 28-1   Filed 11/20/12   Page 10 of 22

*In re Penthouse Executive Club Comp. Litig.*, 2010 WL 4340255 at *4 (S.D.N.Y. Oct. 27, 2010) (holding that plaintiffs' evidence of similar job title, job responsibility and work under same management was sufficient to find employees are similarly situated); *Houston v. URS Corp.*, 591 F.Supp.2d 827, 833–34 (E.D. Va. 2008) (holding that plaintiffs' evidence of similarities in job requirements, nature of the work, method of payment and status as "independent contractors" was sufficient).

Federal courts throughout the United States have conditionally certified collective groups of contracted delivery drivers with facts very similar to those presented here. *See, e.g. Scott*, 2012 WL 645905 at *7 (conditionally certifying a nationwide FLSA class of bakery distributors that "as a general matter, have similar job duties"); *Spellman v. American Eagle Express, Inc.*, 2011 WL 4102301 at *1 (E.D. Pa. May 18, 2011) (holding plaintiffs' evidence that they worked as "couriers" and were subject to defendant's control and supervision and worked over forty hours a week was sufficient); *Coats v. Nashville Limo Bus, LLC*, 3-10-0759, 2011 WL 308403, *2 (M.D. Tenn. Jan. 27, 2011) (conditionally certifying driver class where common company policy was classifying drivers as independent contractors); *Lewis v. ASAP Land Exp., Inc.*, 2008 WL 2152049, *1 (D. Kan. May 21, 2008) (conditionally certifying a class of delivery drivers on evidence that delivery drivers were improperly classified as independent contractors and thereby together were "victims of a single decision, policy or plan"); *Labrie v. UPS Supply Chain Solutions*, 2009 WL 723599 at *6 (N.D. Cal. Mar.18, 2009) (holding that plaintiffs' evidence of similarities in job duties, nature of work, contract with defendant, hours worked and classification as "independent contractors" was sufficient to find delivery drivers were similarly situated).

Additionally, Defendants uniformly classify all Distributors as independent contractors. The classification is contained in a contract that Defendant requires that all Distributors sign in nearly identical form. A uniform classification of individuals strongly supports conditional certification because it is substantial evidence of a single plan. *E.g. Scott*, 2012 WL 645905 at *8 ("One similarity is that all [bakery distributors] are classified as an 'independent contractor' under the Agreement, which weighs in favor of conditional certification."); *Westfall v. Kendle Intern., CPU, LLC*, 2007 WL 486606 at *9 (N.D.W.V. Feb. 15, 2007) ("The uniform classification of its workers as independent contractors points toward the conclusion that the putative members of the collective action were subject to a single plan of the defendants.").

In short, Defendants require all Distributors to comply with the same performance requirements, down to their schedules and equipment, and label all Distributors with the same job classification. Based on their job requirements and classifications alone, Plaintiffs are sufficiently similarly situated for the Court to grant conditional certification.

### b. Plaintiffs and members of the proposed class face similar economic realities.

Plaintiffs and members of the proposed collective group all have the same economic relationship with Defendants. The United States Court of Appeals for the Fourth Circuit has adopted the "economic realities test" to determine whether independent contractors are misclassified for purposes of the FLSA. *See Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 305 (4th Cir. 2006). "[T]he test is designed to capture the economic realities of the relationship between the worker and the putative employer."[5] *Id.* Ultimately, the economic realities test asks

---

[5] "The factors are (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative

"whether the [plaintiffs] were, as a matter of economic reality, dependent on the business they served, or, conversely, whether they were in business for themselves." *Id.* Courts throughout the United States have concluded that plaintiffs and putative members of a collective group are similarly situated if there is evidence of similarity in light of the economic realities test. *See, e.g. Scott*, 2012 WL 645905 at *7 (holding that bakery distributors are similarly situated when they "share a similar business relationship with the Defendants."); *Spellman v. American Eagle Express, Inc.,* 2011 WL 4102301 at *1 (E.D. Pa. May 18, 2011) (holding plaintiffs' evidence that they worked as "couriers" and were subject to defendant's control and supervision and worked over forty hours a week was sufficient); *Edwards v. Multiband Corp.,* 2011 WL 117232 at *3–5 (D. Minn. Jan.13, 2011) (holding similarities in the defendant's "piece rate" payment method, the defendant's control over scheduling and monitoring of work was sufficient); *Westfall v. Kendle International, CPU, LLC,* 2007 WL 486606 at *8–10 (N.D.W.V. Feb.15, 2007) (holding that designation as "independent contractors" and similarities in hours worked, as well as evidence that defendants made their schedule, "instruct[ed]" them how to work, refuse[d] to allow them to negotiate pay and provided them with equipment was sufficient).

Plaintiffs and members of the proposed collective group are similarly situated with respect to the economic realities of their employment. The economic reality is that Distributors are economically dependent on the delivery of Defendants' products to Defendants' customers using Defendants' protocols. Distributors are all classified as independent contractors and paid a "piece rate" based upon the amount of bakery products that Defendants' customers sell.

---

employer's business." *Schultz*, 466 F.3d at 304–05 (citing *Herman v. Mid–Atlantic Installation Servs., Inc.*, 164 F.Supp.2d 667, 671 (D. Md. 2000) and *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir. 1994). "These factors are often called the "Silk factors" in reference to *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), the Supreme Court case from which they derive." *Id.*

Importantly, Defendant classifies all Distributors as "statutory employees" pursuant to Section 3121(d)(3) of the Internal Revenue Code. ("COMPANY shall treat DISTRIBUTOR as a 'statutory employee' as defined in Section 3121(d)(3) of the Internal Revenue Code"). The code specifies that, for Federal Insurance Contributions Act (FICA) purposes, an individual is a statutory employee if he provides services as an "agent-driver or commission-driver engaged in distributing … bakery products … for his principal." 26 U.S.C. § 3121. In order to qualify as a statutory employee, the individual must meet three criteria that are substantially similar to several factors considered in the FLSA's economic reality test:

> (a) the contract of service contemplates that substantially all the services to which the contract relates in the particular designated occupation are to be performed personally by such individual, (b) such individual has no substantial investment in the facilities used in connection with the performance of such services (other than in facilities for transportation) and (c) such services are part of a continuing relationship with the person for whom the services are performed and are not in the nature of a single transaction.

26 C.F.R. § 3121(d)–1; *compare Schultz*, 466 F.3d at 305. Defendant has classified all Distributors as "statutory employees" under the forgoing definition, and has consistently paid FICA taxes on behalf of each of the distributors. This alone is sufficient to find that Plaintiffs and members of the proposed collective group are similarly situated with respect to the economic realities test that will be used to establish that Distributors are employees of Defendants.

Notwithstanding Defendants' admission that Distributors are subject to a long-lasting personal service contract in which they have little investment, other common facts show that all Distributors are similarly situated. Plaintiffs and members of the proposed collective group are similarly situated with respect to all elements of the economic reality test. First, Defendants have substantially more control over the manner in which Distributors do their work than the

individuals themselves do.[6] Defendants control virtually every aspect of its bakery product distribution chain. Among other things, Defendants set the delivery schedule, Defendants select the quantity and type of products that Distributors deliver, Defendants set the product price, Defendants determine what advertisements and discounts to run, Defendants modify Distributors' orders, Defendants reprimand Distributors, Defendants mandate that Distributors load their trucks in a certain way, and Defendants specify the way that stale bread must be sorted. Plaintiffs and members of the proposed collective group are also similarly situated with respect to second economic reality factor—Distributors cannot control their profit or loss based upon managerial skill because Defendants maintain complete control over their product sales: Defendants control product price, sales and marketing, extend credit to retailers, negotiate distribution contracts with retailers, dictate product selection, compensate Distributors for unsold stale product, and provide a state-of-the art computer system that generates sales forecasts. Similarly, Distributors cannot control their overhead by streamlining their service or reducing service frequency because Defendants mandate how often Distributors must service retailers. There is simply no room for managerial discretion on the part of Distributors that could allow them to control their profit or loss.

Plaintiffs and members of the proposed collective group are also similarly situated with respect to the third factor, the worker's investment in equipment or employment of other workers. Although Defendants require all Distributors to pay for their own delivery vehicles and

---

[6] The degree of control analysis focuses on the comparative amount of control exerted by each party. *Schultz*, 466 F.3d at 305 ("Although control is an important part of the *Silk* test, the issue is not the degree of control that an alleged employer has over the manner in which the work is performed in comparison to that of *another employer*. Rather, it is the degree of control that the alleged employer has in comparison to the control exerted by the *worker*.) (emphasis in original).

equipment, they provide substitute drivers for Distributors who need to take time off of work.[7] Additionally, Defendants provide the most important piece of equipment—the handheld computer system that coordinates every aspect of the job. Fourth, Distributors are similarly situated with respect to the degree of skill required for the work. Distributors' daily tasks are carefully scripted by Defendants—from the time they arrive at the warehouse, to how they load their trucks, to how they display the product of store shelves, to how they unload and sort the product at the end of the day—there are no special skills required to drive a truck from store to store and place bread on a shelf. Plaintiffs and members of the proposed collective group are also similarly situated with respect to the fifth factor—the degree of the permanency of the relationship. All Distributors are subject to the same contract provisions that provides for an indefinite period of employment. Finally, Distributors are similarly situated because they all perform the same job for Defendants and their work is integral to Defendants' business—without distributors Defendants wouldn't be able to sell any product.

As described, Plaintiffs face similar economic realities. Considering together the similarities in Plaintiffs' economic realities, job requirements and classifications, Plaintiff set forth a factual nexus between the manner in which Defendant's policies affected them and the manner in which it affected other employees.

### 3. This Court Should Facilitate Notice.

Court facilitated notice is appropriate to promote judicial economy and because the statute of limitations is running on the claims of absent collective group members. The United States Supreme Court has held that judicial economy in FLSA cases "depend[s] upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that

---

[7] The purchase of a delivery truck is not an investment in an independent business because it is not specific to Flowers and has a transferrable value outside of the business.

they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. In *Hoffmann-La Roche*, the Court encouraged district courts to engage in the notice process early to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation. *Id*. at 171–72. The Court did not provide a standard for determining when court-approved notice should be sent, but it did state that notice is proper in "appropriate cases" and lies within the "discretion" of the district court. *Id*. at 169–70. Court facilitated notice is appropriate in this case.

Prompt court action is necessary in this case because the claims of potential opt-in plaintiffs are being extinguished or diminished due to the running of the FLSA statute of limitations. A claim brought pursuant to the FSLA must be "commenced within two years after the cause of action accrued … ." 29 U.S.C. § 255(a). Generally, an action is "commenced" on the date the complaint is filed but, in the case of a collective action, if an individual claimant does not immediately file written consent to become a party plaintiff then the plaintiff is an "opt-in plaintiff" and action is considered to be "commenced" when the opt-in plaintiff files written consent. 29 U.S.C. § 256(b). Thus, unlike Rule 23 class actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of this action. *Id.* The consequence of the unique statute of limitations contained in the FLSA is self-evident—everyday that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued erosion of these claims.

In addition to preserving the legal rights of potential opt-in plaintiffs, court facilitated notice will create the significant judicial economies recognized by the United States Supreme Court in *Hoffman-La Roche.* Notice of conditional certification benefits the judicial system by resolving common issues of fact and law collectively. *See Hoffmann-La Roche*, 493 U.S. at 170.

Such collective adjudication will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring the Plaintiff and opt-in Plaintiffs to file separate cases in multiple federal district courts would not be an economic use of resources under the circumstances. Plaintiffs have demonstrated, by submission of additional consent to join forms, that other putative class members are interested in joining this lawsuit and it is reasonable to expect there are many more individuals like them.

### 4. Plaintiffs' proposed notice is accurate and informative.

Plaintiffs' proposed notice, attached as Exhibit 1, is "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. The notice mirrors notice forms that other federal district courts have approved in similar cases. As such, the proposed notice should be adopted because it achieves the ultimate goal of providing employees accurate and timely notice of the pendency of the collective action.

Plaintiffs request that the Court order a ninety-day notice period for putative class members to join the case. Other courts routinely accept such requests as reasonable. *See Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 490 (S.D.N.Y. 2009); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007); *Carter v. Anderson Merchandisers*, LP, 2008 WL 2783193 (C.D. Cal. July 10, 2008). Plaintiffs also request that the Court authorize Plaintiffs' Counsel to send Reminder Notices to the putative class forty-five days and seventy-five days after the first Notice is mailed. The proposed Reminder Notice is attached as Exhibit 2. The reminder would be mailed out to only those who have not opted in to the case by the time the forty-five day and seventy-five day deadlines occur. Reminder notices are an important component in maintaining the Court's managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way. "By

monitoring preparation and distribution of the notice, a court can ensure it is timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Sending reminder cards serves both to remind those persons who wish to join to do so within the notice period and to ensure that those whose letters were misplaced or not received or opened still have a fair opportunity to join. Reminder cards, moreover, will lower the number of late opt-ins, thus reducing the burden on the Court in deciding whether late opt-ins should be allowed. *See e.g., Harris v. Vector Mktg. Corp.*, 2010 WL 1998768 (N.D. Cal. May 18, 2010) (order granting conditional certification and finding the mailing of a reminder notice to be appropriate); *Oliver v. Aegis Commc'ns Group, Inc.*, 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008) (order granting conditional certification and allowing plaintiffs' counsel to send subsequent notices during the notice period).

Finally, and in addition to mailing, the Court should require Defendants to post notice of this lawsuit in each of the Flowers Baking Company of Jamestown warehouses. *See Garcia v. Salamanca Group*, 2008 WL 818532, at *5 (N.D. Ill. March 24, 2008) (ordering notice to be sent by mail and posted in the workplace); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006) (concluding the best notice practicable to the potential class is delivery via first-class U.S. mail and posting on the job site); *Veliz v. Cintas, Corp.*, 2004 WL 2623909, at *2 (N.D. Cal. Nov. 12, 2004) (ordering defendant to post notice and consent forms in all of its workplaces).

### B.     Production of a list of Distributors is necessary to facilitate notice.

All Distributors employed by Defendants in the past three years are "similarly situated" employees for purposes of the FLSA. Thus, their identification to Plaintiffs and their counsel is necessary to provide them with notice of the action as contemplated by the law. *See Hoffmann-La Roche*, 493 U.S. at 170 (holding that district courts have discretion to facilitate notice to

19

potential plaintiffs and observing the benefits of collective actions "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."). Plaintiffs request that this Court order Defendants to produce to Plaintiffs the following within ten days of its Order: an updated computer-readable data file containing information necessary to facilitate notice, including the names, last known mailing addresses, employment dates as a Distributor, dates of birth, and the last four digits of the social security numbers of all current and former employees of Flowers Baking Co. of Jamestown, LLC who have worked as a Distributor in the three years preceding the date of the order.

## IV.     Conclusion

Plaintiffs have set forth the factual basis from which this Court can determine that similarly situated plaintiffs exist. Plaintiffs respectfully request that this Court follow the well-established precedent from the United States Supreme Court, United States Court of Appeals for the Fourth Circuit, and (1) authorize this case to proceed as a collective action, (2) order identification of all Distributors who worked for Defendant Flowers Baking Co. of Jamestown, LLC, and (3) authorize the issuance of Plaintiffs' proposed notice to be mailed by Plaintiffs' counsel to all potential opt-in plaintiffs employed by Defendants in the past three years, along with subsequent reminder notices.

Dated: November 20, 2012                              Respectfully submitted,

                                                      s/ Shawn J. Wanta            .
                                                      BAILLON THOME JOZWIAK & WANTA LLP
                                                      Shawn J. Wanta, *pro hac vice*
                                                      222 South Ninth Street
                                                      Suite 2955
                                                      Minneapolis, MN 55402
                                                      Telephone: (612) 252-3570
                                                      Facsimile: (612) 252-3571

and

s/ Ann Groninger          .
COPELEY JOHNSON GRONINGER PLLC
Ann Groninger
225 East Worthington Avenue
Charlotte, NC 28203
Telephone: 704-200-2009
Facsimile: (888) 412-0421

Attorneys for Named Plaintiffs

## CERTIFICATE OF SERVICE

I, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to the following person:

Kevin P. Hishta
GA BarNo. 357410
(Admitted Pro Hac Vice)
A. Craig Cleland
GA Bar No. 129825
(Admitted Pro Hac Vice)
Margaret Santen Hanrahan
GA Bar No. 578314
(Admitted Pro Hac Vice)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404.881.1300
Facsimile: 404.870.1732
kevin.hishta@ogletreedeakins.com
craig.cleland@ogletreedeakins.com
maggie.hanrahan@ogletreedeakins.com


Gregory P. McGuire, NC State Bar #14237
OGLETREE, DEAKINS, NASH, SMOAK & STEWART,P.C.
4208 Six Forks Road, Suite 1100
Raleigh, NC 27609
Telephone: 919.787.9700
Facsimile: 919.783.9412
Email: gregory.mcguire@ogletreedeakins.com

Attorneys for Defendants


Dated this the 20th day of November, 2012.


/s/Ann E. Groninger
Ann E. Groninger
N.C. State Bar No: 21676