UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00596-MOC-DSC

| | | |
|---|---|---|
| SCOTT REHBERG, WILLARD ALLEN RILEY, and MARIO RONCHETTI, On Behalf of Themselves and Others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| Vs. | ) ) | ORDER |
| FLOWERS BAKING COMPANY OF JAMESTOWN, LLC, and FLOWERS FOODS, INC., | ) ) ) ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on Plaintiff Mario Ronchetti's Motion for Class

Certification (#106) and Defendants' Flowers Baking Co. of Jamestown, LLC ("Jamestown")

and Flowers Foods, Inc. ("Flowers Foods") (collectively, "Defendants") Motion to Decertify

(#111). Having considered the parties' briefs and oral arguments made on February 11, 2015, as

well as the record and applicable law, and for the reasons set forth in this Order, Plaintiff's

Motion is GRANTED and Defendants' Motion is DENIED.

I.    PROCEDURAL BACKGROUND

Plaintiffs, a group of bakery product distributors for Defendant Jamestown (a wholly owned

subsidiary of Defendant Flowers Foods), filed suit on September 11, 2012, alleging violations of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the North Carolina Wage

and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq.*  Plaintiffs allege they are

misclassified by defendants as independent contractors, as opposed to employees, and are

therefore entitled to certain benefits under the FLSA and the NCWHA, namely, time-and-a-half

-1-

pay for hours worked in excess of forty (40) per week. Plaintiffs also allege that Defendants made deductions from their wages without written notice, which is unlawful under the NCWHA.

Prior to the filing of the instant motions, Plaintiffs Scott Rehberg, Willard Allen Riley, and Mario Ronchetti moved for conditional certification of the FLSA claims as a collective action under § 216(b), on behalf of themselves and other current and former distributors. The court granted conditional certification on March 22, 2013 regarding such claims for the following class: "all individuals who have or had a distributor agreement with Flowers Baking Co. of Jamestown at any time from September 12, 2009 to the date of this Order and who sign and timely file a consent to join this action pursuant to 29 U.S.C. § 216(b)." (##38, 41). At the time that it granted conditional certification, the court found that Plaintiffs had shown that the putative class members were together the probable victims of a single decision, policy or plan and were similarly situated in that: (1) plaintiffs had the same job duties; and (2) were subject to the same policies and standards determining their compensation and performance requirements. Since the entry of that order, the parties have undergone extensive discovery. Now before the court are the two pending motions regarding the suitability of all claims in this this case as a class action. Plaintiff seeks to certify the NCWHA claims. (#106). Defendant seeks to decertify the FLSA claims. (#111).

## II. FACTUAL BACKGROUND

Plaintiff Mario Ronchetti is a distributor who delivers Flowers products on behalf of Flowers Foods and Jamestown. Defendants uniformly classify all distributors, including Mr. Ronchetti, as independent contractors, pursuant to a "Distributor Agreement," which all distributors have

-2-

signed.[1] See (#107-1); Chuck Rich Aff. (#117-17). Flowers is a producer and marketer of packaged bakery foods and is the parent company of approximately 40 subsidiary bakeries throughout the United States, including Jamestown. Rich Dep. (#107-1 at 28.) Jamestown is the entity that enters into Distributor Agreements with distributors (#107-1 at 3) and enforces the terms therein, while Flowers establishes the policies and procedures that Jamestown and its distributors must employ.

       The distributor position at issue in this case entails picking up Flowers bakery products from one of 24 defendant-owned warehouses in North Carolina, South Carolina, Virginia, and West Virginia, and delivering them to customers in a defined geographic territory. Paul Holshouser Aff. (#32-2) ¶ 3. The orders are first delivered to defendants' Jamestown, N.C. baking factory and then shipped to the respective warehouses where they are picked up for distribution and sale by distributors to customers. Id. ¶ 9. Each warehouse is managed by a Sales Manager responsible for the oversight of the territories within their respective branch. Id. ¶ 3. Distributors purchase or are otherwise granted distribution rights to certain product brands within a defined geographic territory. Id. ¶ 8. Plaintiffs allege that a distributor's route is pre-determined by Defendants. Scott Rehberg Decl. (#28-2) ¶ 5. Distributors' job duties include delivering Flowers products to customers, restocking shelves with fresh product, and removing stale product. Id. Pursuant to the Distributor Agreement, each distributor is responsible for purchasing their vehicles and some of their own equipment. Distributor Agreement ¶ 9.1 (#107-1 at 6).

---

[1] The record indicates that Jamestown has used various Distributor Agreements since 1994, the basic framework of which has remained the same. See Chuck Rich Affidavit (#117-17). While not all putative class members have signed the exact same Distributor Agreement, all such agreements executed between distributors and Jamestown contain a provision explicitly stating that distributors are classified as independent contractors.

-3-

According to Defendants, it is the distributor alone who determines the type of product and quantity that is delivered to a particular customer. Def. Mem. Opp. Conditional Certification (#32) at 5. The quantity to be delivered to each customer is based upon a four week average, to which distributors can make adjustments based upon the customers' needs, as well as other variables such as weather and holidays. Id. According to Plaintiffs, however, Defendants reserve the right to change the quantity of a particular order and the distributor is required to deliver that amount, even if the distributor disagrees. Rehberg Decl. ¶ 6. Distributors are compensated on a "piece rate" basis in that Defendants pay them based upon the quantity of product sold by customers. Id. ¶ 3.

Distributors service both cash accounts and charge, or national, accounts, each type having distinct service requirements. Def. Mem. (#32) at 7; Willard Riley Dep. At 85 (#32-5) at 50. For cash accounts, distributors are apparently granted a certain amount of autonomy, including determining how long to spend servicing each customer; the ability to extend credit to the customer; and more discretion in certain other areas such as marketing, product mix, and displays. Def. Mem. (#32) at 7. In contrast, charge, or national, accounts are governed by a stricter set of contractual requirements negotiated between the customer and Defendants. Id.; Rehberg Decl ¶ 7. Such requirements include hours of service requirements, certain service procedures, and other regimented marketing programs. Def. Mem. (#32) at 7. Though distributors can pursue additional cash accounts, Plaintiffs contend that Defendants retain exclusive control over Flowers products. Rehberg Decl. ¶ 7.

-4-

### III.    DISCUSSION OF CLASS CERTIFICATION OF THE NCWHA CLAIMS

#### A.  Named Plaintiff

The named plaintiffs in this action's complaint (#1) are Mario Ronchetti, Scott Rehberg, and Willard Allen Riley. Only Plaintiff Ronchetti seeks certification on behalf of the class for the NCWHA claims. Plaintiff Ronchetti is a distributor who performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff Ronchetti is a resident of Cabarrus County, North Carolina whose area of distribution includes Charlotte and Harrisburg, North Carolina. He operates out of a Jamestown distribution center. Plaintiff Ronchetti has been employed as a distributor with Flowers since approximately May 16, 2004.

#### B.  Proposed Class and Class Counsel

Plaintiff moves this court to certify the NCWHA claims in this litigation as a class action, with the class members defined as follows:

> All persons who, at any time from September 12, 2009, continuing through entry of judgment in this case, worked as Distributors in the State of North Carolina for Flowers Foods, Inc. or Flowers Baking Co. of Jamestown, LLC and who were classified as independent contractors.

Plaintiff seeks certification under Rule 23(b)(2), arguing that Defendants have misclassified Plaintiff and proposed class members as independent contractors such that injunctive or declaratory relief is appropriate respecting the class as a whole. Additionally, Plaintiff seeks certification under Rule 23(b)(3), arguing that common questions of fact and law predominate over questions affecting only individual class members. Plaintiff asks the court to appoint attorneys Shawn Wanta and Ann Groninger as class counsel.

-5-

## C. **Rule 23**

Rule 23 of the Federal Rules of Civil Procedure governs certification of a class action. "A district court has broad discretion in deciding whether to certify a class." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction." Gunnells v. HealthPlan { "pageset": "Se5 Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (internal quotations and citations omitted). The party seeking class certification bears the burden of proof, Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1267 (4th Cir.1981), and must present evidence that the putative class complies with Rule 23. EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). In determining whether the party seeking certification has carried its burden, "a district court may need to 'probe behind the pleadings before coming to rest on the certification question.'" Id. (quoting Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013)).

District courts are not required "to accept plaintiffs' pleadings when assessing whether a class should be certified." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004). Rather, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." Thorn v. Jefferson–Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (quoting Gariety, 368 F.3d at 365). While Rule 23 does not grant courts "license to engage in free-ranging merits inquiries at the certification stage," the court should consider the merits of the case to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1194–95 (2013) (internal citations omitted).

-6-

To obtain class certification, a plaintiff must satisfy the four requirements of Fed. R. Civ. P. 23(a). Additionally, the case must be consistent with at least one of the types of class actions defined in Fed. R. Civ. P. 23(b).

**D. Analysis of Rule 23(a) Requirements**

Class certification under Rule 23(a) is appropriate if the class is "ascertainable" and if the following four requirements are met: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the representative's claims or defenses are typical of those of the class; and 4) the representative will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23.

1. Ascertainability

In addition to the certification requirements of 23(a), Rule 23 requires that an order certifying a class action "define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). The Fourth Circuit has explained this component of certification as a "threshold requirement that the members of a proposed class be 'readily identifiable'" in reference to objective criteria. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014). "The plaintiffs need not be able to identify every class member at the time of certification. But "if class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." Id. (internal quotations and citation omitted).

Plaintiff argues that the class is ascertainable because the precise identities of all class members can be readily determined from Defendants' business records. Defendants do not challenge Plaintiff's contentions in this regard. The court finds that the proposed class satisfies the ascertainability requirement.

-7-

2. <u>Numerosity</u>

The numerosity component of Rule 23(a) requires that the class be so numerous as to make joinder of all members impracticable. Plaintiff estimates that the proposed class contains over 100 distributors, making it impractical to bring all class members before the court on an individual basis. Defendants do not dispute this contention. Indeed, no specific number of claimants is required to sustain a class action, and the Fourth Circuit has certified classes significantly smaller than the putative class here. <u>See, e.g.</u>, <u>Brady v. Thurston Motor Lines</u>, 726 F.2d 136 (4th Cir. 1984) (certifying a class of 74 persons); <u>Cypress v. Newport News General & Nonsectarian Hospital Association</u>, 375 F.2d 648, 653 (4th Cir.1967) (certifying a class of 18). The court finds that the proposed class satisfies the numerosity requirement.

3. <u>Commonality</u>

The commonality element requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members all suffered the same injury, not that they merely suffered a violation of the same provision of law. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011). Although the rule of commonality "speaks in terms of common questions, 'what matters to class certification ... [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 360 (4th Cir. 2014) (quoting <u>Wal–Mart</u>, 131 S. Ct. at 2551) (emphasis in original). Even a single common question will suffice for commonality, <u>Wal-Mart</u> 131 S. Ct. at 2556, "but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 360 (4th Cir. 2014) (quoting <u>Wal-Mart</u> at 2551).

-8-

The issue before the court is thus whether Defendants' uniform classification of all distributors as independent contractors can answer, in a single stroke, the question of whether such classification violated the NCWHA. In order to determine commonality, the court must examine the claims that Plaintiff and the purported class bring in this matter, as "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2552 & n.6 (2011). Plaintiff argues that he and the proposed class satisfy the commonality requirement by presenting common questions of law and fact for both of their NCWHA claims (the "misclassification" claim and "wage deductions" claim). The court will address the misclassification claim first.

Plaintiff argues that commonality is satisfied for its misclassification claim because at the heart of all putative class members' claims is the common question of whether Defendants improperly classified them as independent contractors. Defendants respond that uniformly classifying distributors as independent contractors is not enough to establish commonality.

The parties debate the proper standard for determining employee status under the NCWHA, an inquiry which merits resolution so that the court can determine whether common evidence exists to adjudicate the claims of Plaintiff and all putative class members together. Plaintiff contends that the "right to control" test governs; Defendant contends that the "economic realities test" governs. The distinction is significant in that the "right to control test" focuses on the established policies of the independent contractor and the alleged employer, while the "economic realities" test focuses on how those policies actually affect individual workers.

-9-

*a. Discussion of the Proper Standard*

Plaintiffs argue that the proper standard for determining whether an individual is an employee or an independent contractor under North Carolina law involves consideration of the eight factors outlined in <u>Johnson v. News & Observer Publ'g Co.</u>, 604 S.E.2d 344, 347 (N.C. Ct. App. 2004). These factors include whether the distributors:

a. are engaged in an independent business, calling, or occupation;
b. are to have the independent use of their special skill, knowledge, or training in the execution of work;
c. are doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis;
d. are not subject to discharge because they adopt one method of doing the work rather than another;
e. are not in the regular employ of the other contracting party;
f. are free to hire assistants as they may think proper;
g. have full control over such assistants; and
h. select their own time.

<u>Id.</u> In <u>Johnson</u>, the North Carolina Court of Appeals applied the right to control test in the context of a personal injury case involving a company's vicarious liability for the actions of an independent contractor. <u>Id.</u> at 344-47. Plaintiff argues that although the <u>Johnson</u> court was not adjudicating an NCWHA claim, the Fourth Circuit adopted the eight factors in the NCWHA context in the case <u>Church v. Home Fashions Int'l, LLC</u>, 532 Fed. Appx. 345, 348 (4th Cir. 2013), wherein the court applied the eight factors articulated in <u>Johnson</u> and another North Carolina case, <u>McCown v. Hines</u>, 537 S.E.2d 242, 244 (N.C. Ct. App. 2000), to find the plaintiff was an employee under the NCWHA. The <u>Church</u> court stated, "[a]lthough no single factor is controlling, nor must all factors be present or in agreement, there are 'four principal factors generally recognized as demonstrating the *right to control* the details of work: (1) method of payment; (2) the furnishing of equipment; (3) direct evidence of exercise of control; and (4) the

-10-

right to fire.'" Id. at 347-48 (emphasis added). Church also cites Youngblood v. North State Ford Truck Sales, 364 S.E.2d 433 (N.C. 1988), wherein the Supreme Court of North Carolina found that the right to control test governed the issue of whether a plaintiff was an employee within the meaning of the Workers' Compensation Act. Id. at 435. Plaintiff thus claims that, pursuant to Johnson and Church, the right to control test governs whether distributors are independent contractors or employees under the NCWHA. The court notes, however, that the Church decision, as an unpublished decision from the Fourth Circuit, is not binding. Moreover, given that they did not directly deal with the NCWHA, neither Youngblood nor Johnson stand for the precise proposition that the right to control test governs an analysis of an employer/independent contractor relationship under the NCWHA.[2]

Defendants respond that though it is proper for courts to apply the right to control test in personal injury, workers' compensation, and certain tort cases, it is inapplicable to claims under the NCWHA. The court agrees. As the North Carolina Court of Appeals explained in Laborers' Int'l Union of North Am., AFLCIO v. Case Farms, Inc., 488 S.E.2d 632 (N.C. Ct. App. 1997), "[t]he [NCWHA] is modeled after the Fair Labor Standards Act." Id. at 314.[3] Courts thus apply

---

[2] Plaintiffs also rely on In re FedEx Ground Package Sys., Inc., Employment Practices Litig., 662 F. Supp. 2d 1069 (N.D. Ind. 2009), wherein the U.S. District Court for the Northern District of Indiana relied on the right to control test to determine a claim under the North Carolina Unfair Trade Practices Act, N.C. Gen. Stat. § 75–1.1(a), and to determine whether to issue a declaratory judgment that the named plaintiffs in the class action were employees. The court in In re FedEx relied on the Johnson factors and noted that "North Carolina courts consult this eight factor test in deciding whether the putative employer has the right of control that makes the other contracting party an employee." In re Fed Ex, 662 F. Supp 2d at 1100 (quoting McCown v. Hines, 353 N.C. 683, 549 S.E.2d 175, 177–178 (2001)). The court also cited Youngblood, stating "If the employer has the right of control, it is immaterial whether he actually exercises it." Id. (quoting Youngblood v. North State Ford Truck Sales, 321 N.C. 380, 364 S.E.2d 433 (1988)). Plaintiff argues that these cases indicate that the North Carolina Supreme Court would utilize the same eight factors to adjudicate employee status under the NCWHA as it has to determine employee status for other purposes. The court disagrees.

[3] Plaintiffs argue that Laborers' Int'l is not determinative in this case because as a North Carolina Court of Appeals decision—not a decision from the highest court in North Carolina—the court is not required to follow it. It is true that federal courts have an obligation to apply jurisprudence of highest state court. Private Mortg. Inv. Servs, Inc. v.

the standards used to assess independent contractor versus employee status under the FLSA to claims brought under the NCWHA. <u>See</u> 13 N.C.A.C. § 12.0103 (where North Carolina General Assembly has used terminology or language of the FLSA, North Carolina Department of Labor "will look to the judicial and administrative interpretations and rulings established under the federal law as a guide for interpreting North Carolina law."). <u>See also</u> <u>Miller v. Colorcraft Printing Co.</u>, No. 3:03-CV-51-T, 2003 WL 22717592, at *3 (W.D.N.C. Oct. 16, 2013); <u>Sullivan v. Knight's Med. Corp.</u>, No. 5:12-CV-592-FL, 2013 WL 4524897, at *5 (E.D.N.C. Aug. 27, 2013); and <u>Garcia v. Frog Island Seafood, Inc.</u>, 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009) (all noting that courts look to FLSA for guidance when interpreting the NCWHA). The court therefore will assess Plaintiff's NCWHA claims as it would under the FLSA, which requires application of the "economic realities test." <u>See, e.g.</u>, <u>Sinclair v. Mobile 360, Inc.</u>, No. 1:07-cv-117, 2009 WL 9073080, at *7, 9-10 (W.D.N.C. Jan. 16, 2009) (applying economic realities test to determine whether individual was an independent contractor or employee under the NCWHA and FLSA), <u>vacated and remanded on other grounds</u>, 417 F. App'x 235 (4th Cir. 2011); <u>Sullivan</u>, 2013 WL 4524897, at *5.

    The economic realities test examines the totality of the circumstances to determine whether a worker is subject to sufficient operational control by the alleged employer to qualify as an employee. The Fourth Circuit has identified six factors that a court should consider in making

---

<u>Hotel Club & Assocs., Inc.</u>, 296 F.3d 308, 312 (4th Cir. 2002). However, in a situation where highest state court has spoken neither directly nor indirectly on the particular issue before the court, the state's intermediate appellate court constitutes "the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise." <u>Id.</u> (internal quotations and citation omitted). Here, where the North Carolina Supreme Court has not directly spoken to the issue of how to determine employee versus independent contractor status under the NCWHA, the court finds significant authority in the Court of Appeals analysis in <u>Laborers' Int'l</u> and the many federal and state court decisions that follow its directives.

-12-

such a determination:

>  (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006) (citing Herman v. Mid–Atlantic Installation Servs., Inc., 164 F.Supp.2d 667, 671 (D.Md. 2000) and Henderson v. Inter–Chem Coal Co., 41 F.3d 567, 570 (10th Cir.1994)). See also Laborers' Int'l, 488 S.E.2d 632 (N.C. Ct. App. 1997) and Horack v. So. Real Estate Co. of Charlotte, Inc., 563 S.E.2d 47, 51 (N.C. Ct. App. 2002) (applying several of the above factors).

b.  *The Parties Arguments on the Merits*

Plaintiff contends that common evidence exists to allow the court to determine whether Plaintiff and all putative class members are properly classified as independent contractors and whether they were denied payment of wages and overtime premium pay.[4] The court agrees. Common evidence as to each factor of the economic realities test exists in this instance. Specifically, the court finds that Defendants exercise uniform control over distributors by requiring that they perform their jobs in accordance with "good industry practice," a standard that Defendants define in detail in the Distributor Agreement (#107-1) at 4, 38, 40. All distributors' opportunities for profit or loss are limited by Defendants' significant control over profit-generating activities for national accounts, including Defendants' role in managing

---

[4] Though Plaintiff fails to argue that common evidence exists relating to the economic realities test in his briefing on his Motion to Certify, Plaintiff makes such arguments in his briefing on Defendants' Motion to Decertify because the economic realities test is used to analyze FLSA claims. Plaintiff also stated at the hearing that he believed he satisfied the commonality requirement under the economic realities test. As such, the court will rely on the evidence that Plaintiff cites in his briefs regarding both motions.

-13-

existing accounts and seeking new ones, and in determining product pricing and promotions.

See, e.g. id. at 59-62. All distributors are expected to make the same level of investment in

equipment—all must purchase their own vehicle but are provided the handhelds, proprietary

software, dollies, and other tools necessary by Defendants. Id. at 43; (#107-3) at 17-18. In terms

of skill required for the job, distributors are subject to common standards—they are not required

to have any advanced knowledge, skill, educational background, or job experience, though they

all undergo the same prospective distributor training. (#107-1) at 42. Regarding the permanence

of distributors' working relationships with Defendants, although there is no set time frame for a

distributorship, distributor relationships are clearly intended to be at least somewhat long-term,

as evidenced by the fact that distributors sign binding agreements, agree to be trained by

Defendants, and make significant monetary investments in their distributorships. Finally,

common evidence shows that the degree to which the distributors' services are considered an

integral part of the employer's business is uniform across the board—Defendants rely almost

exclusively on distributors to deliver their products to retailers and restaurants. Id. at 28. This

common evidence is sufficient to allow the court to undergo the economic realities test as to

Plaintiff and all putative class members.

Defendants acknowledge that though common policies may exist, they are enforced so

differently that they cannot serve as the "common glue" to establish commonality. Defendants

argue that significant differences exist relating to every economic realities test factor. Relevant to

the nature and degree of control exercised, Defendants cite differences as to: 1) management's

"adds" to distributors' orders; 2) sales management's interaction with distributors; and 3) the

extent, frequency, and reasons distributors changed suggested orders. Relevant to the extent to

-14-

which entrepreneurial opportunities were exercised, Defendant argues that significant differences exist as to: 1) advertising and selling distributorships; 2) exercising rights to sell partial distribution right; 3) operating other businesses or under d/b/a/ names; 4) advertising their distributorships and/or entertaining customers; and 5) building equity in their territories. Finally, Defendants argue that significant differences exist as to the distributors' level of investment in their distributorship and use of hired help. Defendant thus argues that no commonality exists here because individualized inquiries are necessary for each class member.

Though Defendant does indeed cite differences between the employment relationships of various distributors, the differences are not so great as to not destroy commonality. While each distributor may have carried out the essential functions of his job slightly differently, such differences will always exist between people due to variations in personal style and circumstance. Here, all distributors were instructed to carry out their jobs subject to the Distributor Agreement, had substantially similar job duties, were subject to a common policy of being classified as independent contractors, and now claim violations of the NCWHA based on this classification. As such, the court believes that it will be able to determine whether Defendants' uniform policy of classifying Plaintiff and all putative class members as independent contractors, as opposed to employees, denied them any rights under North Carolina law. Accordingly, the court finds that for Plaintiff's misclassification claim, there is a question common to all putative class members that can resolved "in a single stroke" and that sufficient common evidence exists to satisfy the commonality element of Rule 23.

Similarly, the court finds that Plaintiff's NCWHA wage deductions claim presents common questions of law and fact can be resolved in a single stroke. Pursuant to N.C. Gen. Stat.

§ 95–25.8, an employer may not withhold any portion of an employee's wages without the employer obtaining a written authorization from the employee. Id. Plaintiffs have alleged that they have been improperly classified as independent contractors instead of employees, and that they are thus covered by this law. Plaintiffs have made a sufficient showing that Defendants, as a matter of policy, charge administrative and warehouse fees, which are deducted from distributors' weekly payments, see (#107-1) at 43; (#107-3) at 18, and have alleged that Defendants do not obtain any written authorization from employees before deducting such fees. Defendants argue that Plaintiff's claims fail here because distributors are not paid "wages" within the meaning of the NCWHA. However, the entire premise of Plaintiff's claims is that distributors are employees, not independent contractors, and that as such, they are entitled to certain benefits, including wages. The court will therefore allow Plaintiff's claim on wage deductions to stand at this time.

Defendants also argue that the question of whether they made unlawful deductions from each North Carolina distributor cannot be answered with common proof, but requires several individualized determinations (i.e. on how each distributor was paid, whether the distributor signed a release of claims, and which version of the Distributor Agreement the distributor signed). The court finds that though there may be differences between the putative class members in such regard, evidence shows that Defendants were subject to a uniform policy of deducting warehouse and administrative fees from distributor's weekly payments, apparently without authorization from any distributor. Plaintiff and putative class members allege a common violation of law based on common acts of the Defendant. As such, the court finds that the differences raised by Defendants, which may indeed be relevant as to damages down the

-16-

road, do not destroy commonality for Rule 23. The court finds that for Plaintiff's wage deductions claim, there is a question common to all putative class members that can resolved "in a single stroke" and that accordingly, Rule 23's requirement of commonality is satisfied.

4. <u>Typicality</u>

The typicality requirement is met where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As courts have long noted, the typicality requirement tends to merge with commonality, "insofar as both 'serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Soutter v. Equifax Info. Servs., LLC</u>, 498 F. App'x 260, 264 (4th Cir. 2012) (quoting <u>General Tele. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 158 n. 13 (1982)). The typicality requirement is well captured "by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" <u>Id.</u> (quoting <u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466 (4th Cir. 2006)). While a "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim," typicality does not require that the plaintiff's claim and those of the putative class "be perfectly identical or perfectly aligned." <u>Deiter v. Microsoft Corp.</u>, 436 F.3d 461, 466-67 (4th Cir. 2006). With that in mind, "the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." <u>Id.</u> at 467. The district court must "review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it" and then "determine the extent to which those facts would also prove

-17-

the claims of the absent class members." Id.

Here, Plaintiff's *prima facie* case asserts that Defendants violated the NCWHA through the same standardized policy of classifying them as independent contractors, failing to pay wages and overtime pay, and making unauthorized compensation deductions. The facts proving Plaintiff's claim derive from the Defendants' uniform application of the "misclassification" and "wage deduction" policies to all distributors. All proposed class members were subject to these policies, and all signed agreements classifying them as independent contractors. Accordingly, the underlying facts of Plaintiff's claims are the same as those of the proposed class members.

Defendants contend that typicality is not met for several reasons. First, Defendant argue that Ronchetti's admission under oath that he does not want to be an employee, see Ronchetti Dep. I: 79:20-25 ("No, I don't want to be an employee. But right now I am an employee that pays the bills."), is fatal to the relief sought in the Complaint (#1), which is premised upon a finding of employment status.[5] Defendants also argue that Ronchetti's claims are not typical of the putative class because he has a separate business, has minimal interaction with sales management, and does not typically have product added to his orders, despite his contentions on behalf of the class that such occurrences are routine.

The court finds, however, that these facts do not render Plaintiff's claims or defenses atypical of the rest of the putative class. These minor differences do not undermine the undisputed facts that Plaintiff and all of the distributors signed the same agreement classifying them as independent contractors, were subject to similar managerial oversight and executive decision making, were not paid wages or overtime, and had deductions taken from their weekly

---

[5] Defendants also make this argument applicable to Rule 23's adequacy of representation prong. The court addresses the merits of this point in the discussion of adequacy of representation.

settlements. The factual differences relied on by Defendants do not destroy typicality. See McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 476 (E.D.N.C. 2010) (finding typicality and noting, "[a]lthough there may be certain factual differences among the individual class members, the class members' claims arise from the same course of conduct … raise common questions of law and fact … and are based on the same legal theory … as those of the named plaintiffs."). See also Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 344 (4th Cir. 1998) ("we…do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects."). The fact that all putative class members had various minor differences in their job situations does not change the root cause of their claim—the policy of classifying distributors as independent contractors.

Defendants also argue that typicality is not met because unique defenses apply to Plaintiff that do not apply to some proposed class members. These raised defenses relate to release of all legal claims against Jamestown by the distributors who sold their distributorships and signed general release forms, see (#117-18) ("Purchase Agreement and General Release Form" executed by three former distributors and a list of all current and former distributors), and statutes of limitations and limitations of damages provisions in various versions of the Distributor Agreement. The court notes that "[e]ven if the same interests and injuries are present for all class members, the typicality of the class representative may be defeated if the class representative is subject to unique defenses that threaten to become the focus of the litigation." In re Computer Sciences Corp. Sec. Litig., 288 F.R.D. 112, 122 (E.D. Va. 2012). See also Ostrof v. State Farm Mut. Auto. Ins. Co., 200 F.R.D. 521, 529 (D. Md. 2001); Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2nd Cir. 1990). Any

-19-

such defense "precludes a finding of typicality because of the danger that the unique defense will preoccupy the class representative to the detriment of the interests of absent class members." In re Mills Corp. Sec. Litig., 257 F.R.D. 101, 105 (E.D. Va. 2009) (quoting 5 Moore's Federal Practice § 23.24[5]). Here, however, the court does not believe that any of the asserted defenses "threaten to become the focus of the litigation." As Defendants acknowledge in their brief, the court may find upon further examination that any release of claims made by a distributor upon selling his distributorship is invalid. See Def. Rep. (#117) at 21. The court could find, however, that the agreement is valid as to some or all former distributors, in which case Defendants would indeed have a certain defense as to all former distributors who signed such releases—which appears to be nearly 50 people. See (#117-18). Other defenses related to contract disputes can similarly be resolved by the court and applied to all potential class members uniformly according to the version of the Distributor Agreement they signed. The court finds that at this time, Defendants' defenses are not so unique as to individual class members that they destroy typicality.

Accordingly, the court finds that typicality is satisfied.

5. Adequacy

The adequacy standard of Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the case." Fed. R. Civ. P. 23(a)(4). This standard has two components. The first component requires that a class member "possess the same interest and suffer the same injury as the class members," Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-26 (1997) (internal quotation and citation omitted), and that the interests of the named plaintiff not be antagonistic to those of the putative class. In re Se. Hotel Properties Ltd. P'ship

-20-

Investor Litig., 151 F.R.D. 597, 606 (W.D.N.C. 1993). The second component requires that the plaintiff's counsel be "qualified, experienced and generally able to conduct the proposed litigation." Romero v. Mountaire Farms, Inc., 796 F.Supp. 2d 700, 715 (E.D.N.C. 2011).

Plaintiff argues that he satisfies the first prong of the adequacy inquiry in that his interests are identical to those of the putative class, there are no actual or potential conflicts of interest between Plaintiff and the putative class, and that when Plaintiff proves he was misclassified based on Defendants' common conduct, he will demonstrate that all of the other putative class members were also misclassified and suffered identical injuries. Plaintiff argues that he has also demonstrated his adequacy by prosecuting this case vigorously on behalf of the class.

Defendants contend that Ronchetti's sworn testimony that he does not want to be an employee, see Ronchetti Dep. I: 79:20-25 ("No, I don't want to be an employee. But right now I am an employee that pays the bills."), makes him an inadequate representative because his interests and those of putative class members are in direct conflict. The court finds that Defendants misconstrue Plaintiff's statements and take them out of context. Plaintiff has made obvious, through the filing of the complaint and through deposition testimony, that he is challenging his classification as an independent contractor so as to obtain rights to overtime pay. He does not seek a resolution from this court that is any different from that sought by the other members of the putative class.

Here, the named Plaintiff has the same interests as all other distributors: reimbursement for unpaid wages at overtime rates and other monetary relief stemming from the allegedly illegal wage deductions. There are no conflicts or antagonistic interests of the named Plaintiff to the interests of any other distributor. See Romero v. Mountaire Farms, Inc., 796 F.

-21-

Supp. 2d 700, 715 (E.D.N.C. 2011). The court therefore finds that Plaintiff is an adequate class representative.

Defendants do not dispute that the attorneys that Plaintiff seeks to name as class counsel are qualified to conduct the litigation. Indeed, the attorneys that Plaintiff has retained are knowledgeable and experienced in employment litigation as well as prosecuting class action matters. As such, the court finds that Plaintiff's counsel have the necessary skill, experience, and qualifications to satisfy adequacy of counsel.

The court finds that the adequacy of representation requirement of Rule 23 is satisfied.

**E. Rule 23(b) Requirements**

In addition to meeting the four prerequisites of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)." Gunnells v. HealthPlan

{ "pageset": "Se5 Servs., Inc., 348 F.3d 417, 423 (4th Cir. 2003). Here, Plaintiff seeks certification under Rule 23(b)(2) and (3).

    1.  Rule 23(b)(3)

Rule 23(b)(3) authorizes class treatment where all requirements of Rule 23(a) are met and where: (1) questions of law or fact common to class members predominate over any questions affecting only individual members; and (2) proceeding as a class is superior to other available methods of fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The requirement that common, rather than individual, questions of law or fact predominate "is similar to but more stringent than the commonality requirement of Rule 23(a)." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation and citation omitted). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant

adjudication by representation." <u>Amchem Products, Inc. v. Windsor</u>, 521 U.S. 591, 623 (1997).

In assessing whether certification is warranted under this rule, the court should consider the non-exhaustive list of factors articulated in Rule 23(b)(3), which are pertinent to a court's "close look" at the predominance and superiority criteria. Fed. R. Civ. P. 23(b)(3)(A)-(D); <u>Amchem</u>, 521 U.S. at 615. Those factors are:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

"In determining whether the predominance standard is met, courts focus on the issue of liability." <u>Ruffin v. Entm't of the E. Panhandle</u>, No. 3:11-CV-19, 2012 WL 5472165, at *10 (N.D.W. Va. Nov. 9, 2012) (citing <u>Zapata v. IBP, Inc.</u>, 167 F.R .D. 147, 165 (D. Kan. 1996)). Here, the issue of liability for Plaintiff's claims under the NCWHA can be determined by a finding of whether Defendants wrongfully classified distributors as independent contractors instead of employees.

Though Defendants maintain that common proof does not exist to allow the court to adjudicate the claims of Plaintiff and all putative class members together, the court finds otherwise, as explained above in the Rule 23(a) analysis. Here, common evidence exists as to the propriety of Defendants' uniform classification of all distributors as independent contractors, which will allow the court to determine whether Defendants are liable for any violations of the NCWHA related to overtime pay or unauthorized deductions. The court finds that the first prong of Rule 23(b)(3) is satisfied, as legal and factual issues common to the putative class

-23-

predominate over any issues affecting only individual members.

Regarding the superiority inquiry, the court has carefully considered the factors articulated in Fed. R. Civ. P. 23(b)(3)(A)-(D) and considered the alternatives to a class action. Plaintiff argues that class treatment is a superior method for adjudicating each putative class member's claims for several reasons. First, it will allow class members to seek relief from Defendants' allegedly wrongful conduct that they would otherwise be unable to pursue because of financial limitations or fear of retaliation. Second, the relatively small amount of damages sought in this case provides little incentive for class members to pursue individual claims. Finally, allowing the action to proceed as a class action will resolve all issues in a single case and promote judicial economy. On all accounts, the court agrees and finds that a class action is indeed the superior method for proceeding in this matter. Though Defendants argue that the proposed class is unmanageable and that adjudicating all members' claims would require multiple individualized inquiries, the court has found otherwise, as explained throughout this Order. The court therefore finds that the superiority prong of Rule 23(b)(3) is satisfied.

2. Rule 23(b)(2)

Rule 23(b)(2) authorizes class treatment where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification under this provision is appropriate "only when a single injunction or declaratory judgment would provide relief to each member of the class." Wal–Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2557 (2011). The court finds that Defendants have acted and continue to act on grounds "generally applicable to the class" by entering into Distributor Agreements

-24-

with each putative class member classifying them as independent contractors and treating them as such, including for the purposes of the NCWHA. Should Plaintiff prevail on his argument that distributors are misclassified as independent contractors, declaratory or injunctive relief enjoining Defendants from continuing to classify the distributors as such would provide relief to each member of the class.

The court also notes that the fact the Plaintiff seeks monetary damages in this action does not prevent certification under Rule 23(b)(2). <u>See, e.g.</u> <u>Pender v. Bank of Am. Corp.</u>, 269 F.R.D. 589, 599 (W.D.N.C. 2010) ("Rule 23(b)(2) can still be satisfied even where a declaratory judgment is 'merely a prelude to a request for [monetary relief].'" (quoting <u>Berger v. Xerox Corp. Ret. Income Guarantee Plan</u>, 338 F.3d 755, 763 (7th Cir. 2003) and holding that certification was appropriate where declaratory relief was sought in addition to monetary relief). Here, Plaintiff seeks declaratory and injunctive relief designating Plaintiff and putative class members as employees and enjoining Defendants from failing to treat them as such under the NCWHA. Though Plaintiff's claims for declaratory relief are likely "mere preludes" for monetary relief, the court finds it appropriate for Plaintiff to maintain the action under Rule 23(b)(2). The court therefore finds that the requirements for certification under Rule 23(b)(2) are also met.

**F. Conclusion as to Rule 23 Class Certification**

As explained in the above analysis, the court finds that Plaintiff have met their burden of showing that all requirements of Rule 23(a) are met and that class certification is appropriate pursuant to both Rule 23(b)(2) and Rule 23(b)(3). The court will therefore grant Plaintiff's motion for class certification at this time. The court notes, however, that "[a]n order that grants

-25-

or denies class certification may be altered or amended before final judgment," Fed. R. Civ. P. 23(c)(1)(C). See also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); Chisolm v. TranSouth Fin. Corp., 194 F.R.D. 538, 544 (E.D. Va. 2000) ("the Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification."). While the court is confident at this point that all of the requirements of Rule 23 are met and that a class action is the most appropriate method of adjudicating the claims of Plaintiff and putative class members, it cautions the parties that it may find, as this case moves forward, that proceeding as a class action would be inappropriate.  As discussed at the hearing, it may also find further down the line that this action would be more appropriately maintained either with respect to particular issues pursuant to Rule 23(c)(4) (providing that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues."), or subclasses pursuant to Rule 23(c)(5), (providing that "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").  At this time, however, the court will grant Plaintiff's Motion to Certify.

## IV.  DISCUSSION OF DEFENDANTS' MOTION TO DECERTIFY THE FLSA CLAIMS

### A.  Standard of Review

The FLSA requires employers to pay overtime compensation for an employee's work in excess of 40 hours per week. 29 U.S.C. § 207. Under the FLSA, a collective action for unpaid minimum or overtime wages may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

These collective FLSA actions are "intended to serve the important objectives embodied in the FLSA by facilitating a resolution in a single proceeding of claims stemming from common issues of law and fact, and to aid in the vindication of plaintiffs' rights by lowering the individuals' costs by pooling claims and resources." Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). A district court exercises its discretion to certify an action as a collective action under the FLSA if members of a proposed class are "similarly situated." In re Family Dollar FLSA Litig., No. 3:12-cv-1951, 2014 WL 1091356, at *1 (W.D.N.C. Mar. 18, 2014). Federal district courts in this circuit typically follow a two-step approach to the "similarly situated" analysis. Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 298 (W.D.N.C. 2013) motion to certify appeal denied, No. 3:12-CV-396-RJC-DSC, 2013 WL 3761078 (W.D.N.C. July 16, 2013) (citing Butler v. DirectSAT USA, LLC, 876 F.Supp.2d 560, 566 (D.Md. 2012)); Romero v. Mountaire Farms, Inc., 796 F.Supp.2d 700, 705 (E.D.N.C. 2011); Choimbol v. Fairfield Resorts, Inc., 475 F.Supp.2d 557, 562–63 (E.D. Va. 2006)).

    First, at the notice stage, the court "may conditionally certify a class under a fairly lenient standard so that potential class members may 'opt-in' to the litigation." In re Family Dollar, 2014 WL 1091356, at *2. In making a preliminary determination whether to conditionally certify the class, the court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011) (citation and internal quotation omitted). At the second stage, after discovery is "virtually complete," the court revisits the "similarly situated" analysis upon a motion from defendant to decertify the class. Long, 292 F.R.D. at 299. The "scrutiny applied in the second stage is more rigorous than that of the notice stage." Romero,

-27-

796 F. Supp. 2d at 705-06. If the court determines under this heightened standard that the plaintiffs are "similarly situated," the collective action proceeds to trial. Id. If, however, the court determines that the plaintiffs are not "similarly situated," the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs may proceed with their individual claims. Id.; Long, 292 F.R.D. at 299.

The FLSA does not define "similarly situated" and the Fourth Circuit has not articulated a specific standard for courts to use in making such a determination. LaFleur v. Dollar Tree Stores, Inc., 30 F. Supp.3d 463, 468 (E.D. Va. 2014) motion to certify appeal denied, No. 2:12-CV-00363, 2014 WL 2121721 (E.D. Va. May 20, 2014) and reconsideration denied, No. 2:12-CV-00363, 2014 WL 2121563 (E.D. Va. May 20, 2014). District courts in this circuit, however, have considered three factors relating to similarity upon a motion to decertify: "1) the disparate factual and employment settings of the individual plaintiffs; 2) the various defenses available to defendant which appear to be individual to each plaintiff; and 3) fairness and procedural considerations." Butler v. DirectSAT USA, LLC, No. DKC 10-2747, 2014 WL 4684337, at *2 (D. Md. Sept. 18, 2014) (citing Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D.Md.2007). "Similarly situated" under a decertification analysis does not necessarily mean "identical." Id.

**B. "Similarly Situated" Analysis**

1. Factual and Employment Settings

Assessing the first factor of decertification requires consideration of whether Plaintiffs have "provided evidence of a company-wide policy which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary." Rawls v.

-28-

Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007). Here, all distributors signed essentially the same agreement classifying them as independent contractors. They have substantially similar job duties, as described in the agreement. Most tellingly, all distributors are subject to the same common classification by Defendants as independent contractors, and thus, not entitled to overtime pay. The court finds that Plaintiffs have provided sufficient evidence of a company-wide policy which may violate the FLSA.  See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1020 (D. Minn. 2007) (holding that evidence of a common policy of uniformly classifying employees as exempt and declining to pay overtime compensation where plaintiffs indicated they worked in excess of 40 hours per week "supports a finding of sufficient commonality between and among the plaintiffs to support collective adjudication of their misclassification claims.")

The heart of the parties' contentions on decertification is whether common evidence exists to allow the court to assess whether all Plaintiffs are independent contractors, or whether the evidence as to each distributor is too widely varying, which would require individualized inquiries for each Plaintiff. As explained above, to determine whether a worker is an employee or an independent contractor under the FLSA, "a court considers the 'economic realities' of the relationship between the worker and the putative employer." Schultz v. Capital Int'l Sec., Inc., 466 F.3d 298, 304 (4th Cir. 2006). The Fourth Circuit has adopted a six-factor test in order to make such a determination, which assesses:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

-29-

Id. (citing Herman v. Mid–Atlantic Installation Servs., Inc., 164 F.Supp.2d 667, 671 (D.Md. 2000) and Henderson v. Inter–Chem Coal Co., 41 F.3d 567, 570 (10th Cir. 1994)).

Defendants contend that decertification is appropriate because significant material differences exist between the distributors on virtually all of the factors under the economic realities test and that such differences require individualized inquiries. Specifically, Defendants argue that the record shows material differences exist between plaintiffs as to: 1) the level of control they were subject to by Defendants; 2) the exercise of entrepreneurial business opportunities; 3) the level of investment and practice of hiring helpers; 4) degree of skill; and 5) duration of relationship with Defendants. Defendants also argue that the degree to which various distributors serviced national accounts (the accounts that are subject to greater control by Defendants) varies so widely as to each distributor that the court would be required to undergo individualized inquiries for each one. Finally, Defendants argue that to the extent they employed any "common policies," they enforced them so differently that they cannot suffice as common proof.

The court finds that significant common evidence exists here to enable the court to determine, on a collective basis, whether all distributors are employees or independent contractors. Though Defendants do indeed point to factual differences between the distributors, "[a] collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member," but rather, "[t]he court should determine whether there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences." Butler v. DirectSAT USA, LLC, No. DKC 10-2747, 2014

-30-

WL 4684337, at *7 (D. Md. Sept. 18, 2014) (internal quotations and citations omitted). Here, the court finds that the similarities between the Plaintiffs' claims far outweigh their differences.

As explained in more detail in the Rule 23 commonality analysis, the court finds that sufficient common evidence exists as to every factor that the court must assess under the economic realities test. Defendants exaggerate isolated differences among the distributors and ignore the larger picture of the issue at hand—that all distributors are subject to Defendants' uniform policies. Given that Defendants have a well-established company policy of classifying all distributors as independent contractors, the court is less concerned by the variations in Plaintiffs' employment circumstances. See id. ("The existence of a common policy may assuage concerns about plaintiffs' otherwise varied circumstances.") (quoting Crawford v. Lexington–Fayette Urban Cnty. Gov't, No. 06–299–JBC, 2008 WL 2885230, at *5 (E.D.Ky. July 22, 2008) and citing England v. New Century Fin. Corp., 370 F.Supp.2d 504, 507 (M.D.La 2005)). The court also notes that Defendants, who now argue that determining independent contractor status requires fact-intensive individualized inquiries, apparently had no difficulty in classifying all distributors as independent contractors when asking them to sign Distributor Agreements. See Nerland v. Caribou Coffee Co., 564 F. Supp. 2d 1010, 1023 (D. Minn. 2007) (finding that employer "Caribou has an internal company policy and practice of viewing its store managers as similarly situated for the purposes of making the FLSA exemption determination, and that this policy is applied uniformly to all Caribou store managers," thus making it "disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

-31-

Here, common evidence of Plaintiff's factual and employment settings lean in favor of a finding that all distributors are "similarly situated" for the purposes of the FLSA.

2.  Individual Defenses

"The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial." Rawls v. Augustine Home Health Care, Inc., 244 F.R.D. 298, 300 (D. Md. 2007). However, "[j]ust because the inquiry [under the asserted defense] is fact-intensive does not preclude a collective action where plaintiffs share common job traits." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1263 (11th Cir. 2008). The presence of defenses that require individualized inquiries does not necessarily require decertification if common issues and facts predominate, and the court finds that other factors indicate that Plaintiffs are similarly situated and proceeding as a collective action would be appropriate. Id. See also Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1107 (10th Cir. 2001) (finding that the existence of highly individualized defenses did not outweigh the benefits of proceeding as a class action).

Defendants argue that several individualized defenses merit decertification here. First, Defendants contend that determining whether distributors are subject to either the "Motor Carrier

-32-

Act Exemption"[6] or the "Outside Sales Exemption"[7] under the FLSA would require the factfinder to hear and weigh significant individualized evidence. The court finds, however, that these exemptions, if applicable to any distributors, do not overwhelm the "similarly situated" analysis. Moreover, the primary inquiry for the court at this point is to determine whether or not all distributors were misclassified as independent contractors and whether they are truly employees within the meaning of the FLSA. The issue of whether the distributors are entitled to overtime pay, all exemptions considered, can be dealt with after the court makes its initial decision as to whether they are "employees" within the meaning of the FLSA. At this time, the court does not find that decertification is appropriate based on the possibility that Defendants

---

[6] The overtime provisions of the FLSA do not apply to any employee covered by the Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). The MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). 49 U.S.C. § 31502(b)(1) provides the Secretary of Transportation with the authority to "prescribe requirements for ... qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). "To establish the applicability of the MCA exemption …[the alleged employer] must show that it is a motor carrier under the MCA and that plaintiff's employment duties involved the safety of operation of motor vehicles weighing at least 10,001 pounds in interstate commerce." Buckner v. United Parcel Serv., Inc., No. 5:09-CV-411-BR, 2012 WL 1596726, at *4 (E.D.N.C. May 7, 2012) aff'd, 489 F. App'x 709 (4th Cir. 2012). A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

[7] The overtime provisions of the FLSA also do not apply to any employee covered by the "Outside Sales Exemption." 29 U.S.C. § 213(a)(1). An outside salesperson is defined as an employee:
    (1) Whose primary duty is:
        (i) making sales ..., or
        (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
    (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

29 C.F.R. § 541.500(a).

    As evident from this language, the outside sales exemption contains two prongs. For purposes of the primary duty prong, the FLSA defines "sale" or "sell" to include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). Furthermore, the "term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).

Hantz v. Prospect Mortgage, LLC, No. 1:13CV1435 JCC/TRJ, 2014 WL 463019 (E.D. Va. Feb. 5, 2014).

-33-

may be able to point to a statutory exemption that would affect their liability.

Defendants also argue that they will assert other individualized defenses against some Plaintiffs but not others, including, "for example," defenses related to statutes of limitations and judicial estoppel. Def. Mot. Decertify (#112) at 26. The court first notes that generally, such defenses are legal issues for the court to determine that would not render the class unmanageable. Furthermore, without greater specificity as to how these defenses would be asserted, the court does not find it appropriate to decertify this action based on defenses that Defendants may or may not choose to assert as to some or all Plaintiffs.

    3.   <u>Fairness and Procedural Considerations</u>

Under the fairness and procedural considerations factor, the court considers:

> the primary objectives of allowance of a collective action under § 216(b), namely (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. The Court also must determine whether it can coherently manage the class in a manner that will not prejudice any party.

<u>Rawls v. Augustine Home Health Care, Inc.</u>, 244 F.R.D. 298, 302 (D. Md. 2007) (internal quotations and citations omitted). Defendants argue that the varying evidence on FLSA liability would require separate mini-trials for each Plaintiff and that if tried together, the widely varying testimony of Plaintiffs would risk jury confusion and error. Defendant also argues that because each Plaintiff's testimony differs so significantly, Defendants would be prejudiced by being required to come up with representative proof as to all Plaintiffs. Finally, Defendants argue that none of the Plaintiffs will be prejudiced by decertification because the statute of limitations was tolled when each opted in, a judgment as to one "party plaintiff" here is not a judgment as to another, and each dismissed opt-in Plaintiff may pursue his own case separately.

-34-

Plaintiffs argue that decertification is inappropriate in this case because a common issues trial, as opposed to over two dozen individual trials, will avoid the inefficiencies of briefing the same pretrial motions, presenting redundant evidence, and making identical legal arguments. Plaintiffs also note that discovery in this matter has lasted almost two years, both parties have obtained extensive written and deposition testimony, and that both sides have the necessary evidence to proceed to trial. The court finds merit in all of these points. Additionally, the court notes that the potential damages in this case are relatively low, and therefore individual distributors are unlikely to pursue individual claims. In light of these considerations, the court finds that the interests of judicial and procedural economy, fairness, and the primary objectives of collective FLSA actions support moving forward with this action collectively. The court also believes, at this time, that it can ably manage this class without prejudice to either party.

**C. Conclusion as to Defendants' Motion to Decertify**

In light of the above analysis, the court finds that members of the proposed class are "similarly situated" for the purposes of collectively adjudicating their FLSA claims. The court will therefore deny Defendants' Motion to Decertify and allow this action to proceed collectively.

**V.    CONCLUSION**

After reviewing the extensive record in this case in relation to the claims pursued here, the court will take this opportunity to note that the distributors seeking employment status through this lawsuit would be well-served to carefully consider the implications of any court decision finding that they are employees within the meaning of the FLSA and NCWHA. If the court determines that all distributors are indeed employees, distributors would essentially

-35-

exchange their entrepreneurial opportunities and benefits associated with their ownership rights in their distributorships for the right to earn overtime pay and other employee benefits. Put another way, a decision unfavorable to Defendants in the context of this lawsuit may very well wind up to be unfavorable to distributors in the context of their business endeavors, ability to generate profits, and any equity they may have in their distributorships.

Nonetheless, the court has determined that this case's current disposition renders all of Plaintiffs' asserted claims appropriate for collective resolution and will therefore allow it to proceed as a class action. Going forward, the court will continue to monitor and assess the feasibility of doing so and will act accordingly if it determines that collective resolution for any reason proves to be improper.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Class Certification (#106) is **GRANTED**;

2.  The case shall proceed with respect to the NCWHA claims as a class action under

    Federal Rule of Civil Procedure 23(b)(3) and 23(b)(2);

3.  The class for Plaintiff's NCWHA claims is defined as follows:

    > All persons who, at any time from September 12, 2009, continuing through entry of judgment in this case, worked as Distributors in the State of North Carolina for Flowers Foods, Inc. or Flowers Baking Co. of Jamestown, LLC and who were classified as independent contractors.

4.  Plaintiff Mario Ronchetti is designated as class representative for the NCWHA claims;

5.  Shawn Wanta and Ann Groninger, the attorneys of record for the appointed class

    representative, are authorized to serve as class counsel to represent the NCWHA class;

6.  The parties are **DIRECTED** to confer and jointly submit, within thirty (30) days of the

    date of this Order, proposed class notice documents in conformance with Rule 23(c)(2),

    which the court will consider before issuing notice to the class;

7.  Defendants' Motion to Decertify (#111) is **DENIED**; and

8.  The case shall proceed with respect to the FLSA claims as a collective action under 29

    U.S.C. § 216(b).

**IT IS SO ORDERED.**

Signed: March 23, 2015

Max O. Cogburn Jr.
United States District Judge

-37-